DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Municipal Court judgment of conviction and sentence. The jury found Stephen Parish, defendant below and appellant herein, guilty of (1) two counts of domestic violence in violation of R.C. 2919.25(A), and (2) two counts of unlawful restraint in violation of R.C.2905.03(A).
 {¶ 2} Appellant raises the following assignments of error for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT VIOLATED MR. PARISH'S RIGHT TO DUE PROCESS AND FAIR TRIAL WHEN IT CONVICTED AND SENTENCED HIM WHEN THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED WHEN IT RANDOMLY SELECTED JUROR NUMBER EIGHT TO BE EXCUSED PRIOR TO DELIBERATION, THEREBY VIOLATING THE SIXTH ANDFOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND SECTION 10 OF ART. I AND SECTION 5 OF ART. IV OF THE OHIO CONSTITUTION."
 {¶ 3} On September 7, 2004, appellant was charged with domestic violence and two counts of unlawful restraint. On February 9, 2005, appellant was charged with domestic violence. The trial court consolidated the two cases for trial.
 {¶ 4} At trial, Washington County Sheriff's Deputy James Malone explained that on September 4, 2004 he responded to a domestic violence complaint. Deputy Malone found Nicole Reed at her parents' home with a bruised eye and an ice pack on her head. Reed told him that her head hurt. Deputy Malone stated that Reed was upset and told him that appellant, her boyfriend, assaulted her. Deputy Malone photographed Reed's injuries, including bruises around her right eye, a mark on her nose, swelling on her forehead and red marks on her left back thigh area.
 {¶ 5} Deputy Malone testified that on February 8, 2005, he responded to a domestic violence complaint involving the same parties. This time, Deputy Malone photographed bruises under Reed's left eye and her arm, and a small cut on her ankle. Deputy Malone also stated that Reed complained of severe pain to her head. Reed gave Deputy Malone written statements that implicated appellant in both incidents.
 {¶ 6} Kenneth Reed, Ms. Reed's father, observed her shortly after the September 4, 2004 altercation with appellant. He stated that she showed up at his house hysterical and bruised. Mr. Reed testified that Ms. Reed's seven year old daughter, Shayla,[1] told him that appellant blocked her and Ms. Reed in the house and would not let them leave. Ms. Reed also told him that appellant would not let them leave the house.
 {¶ 7} During the trial Ms. Reed also testified. She, however, initially invoked her Fifth Amendment right and thus received immunity. Reed then stated that she received the September 4 injuries by tripping over an extension cord in her kitchen and falling onto a chopping block that is located in the middle of the floor. Regarding the February 8 injuries, Reed stated that she was positioned in the back seat of a vehicle, appellant in the front passenger seat and another person driving. Reed stated that appellant "poked" her in the eye when appellant "jumped from the front seat to the back seat cause I started messing with his ear and tickling him on the back of the head." Reed further stated that she "tried to tell people in this courtroom the truth since then. They would not let me drop the charges against him. So, you know, I told the police that he did hit me, and he didn't." The prosecution asked about Reed's prior statements and Reed said that she gave those statements to placate her father.
 {¶ 8} At the close of the evidence the court informed the jury that it would determine which juror to designate as the alternate and excuse from service. To do so, the court stated that it would use a computer game to generate a random number between one and nine. The trial court judge opted to use a computer Solitaire card game and explained that the Ace represents juror number one and the numbered cards represent jurors two through nine. Whichever card the computer generated would be the juror selected as the alternate and excused. The computer selected number eight and the court excused juror number eight.
 {¶ 9} At the conclusion of the trial, the jury found appellant guilty of all four counts. This appeal followed.[2]
 I {¶ 10} In his first assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. In particular, appellant asserts that the prosecutor's evidence is not credible. Appellant argues that (1) Deputy Malone's and Mr. Reed's testimony is not credible because neither individual witnessed the alleged incidents and (2) Shayla's testimony is not credible.
 {¶ 11} The prosecution contends that (1) although Deputy Malone and Mr. Reed did not witness the incidents, they observed the victim immediately after the incidents and observed her physical injuries and heard her statements; (2) both Deputy Malone and Mr. Reed testified that Ms. Reed told them that appellant struck her; and (3) witness credibility is generally an issue reserved for the trier of fact. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" See Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541
(quoting State v. Martin [1983], 20 Ohio App.3d 172, 175,485 N.E.2d 717).
 {¶ 12} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "`exceptional case in which the evidence weighs heavily against conviction.'" Thompkins,78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175); see also,State v. Lindsey (2000), 87 Ohio St.3d 479, 483,721 N.E.2d 995.
 {¶ 13} In the case at bar, we believe, after our review of the record, that the prosecution presented ample competent, credible evidence to establish that appellant committed the offenses of domestic violence and unlawful restraint. R.C.2919.25(A) defines domestic violence: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Ms. Reed suffered from numerous physical injuries and she also gave written and tape recorded statement to Deputy Malone in which she stated that appellant caused her physical harm. Appellant's complaint that neither Deputy Malone's nor Mr. Reed's testimony is credible because neither personally observed him hit Ms. Reed is without merit. Their testimony along with other evidence provided ample circumstantial evidence that appellant struck Ms. Reed. Both observed her shortly after the incidents and observed the physical injuries and heard Ms. Reed state that appellant caused the injuries. Thus, we believe that the record supports the conclusion that ample competent, credible evidence exists to support appellant's domestic violence convictions.
 {¶ 14} The record also contains ample competent, credible evidence to support appellant's unlawful restraint convictions. R.C. 2905.03(A) defines unlawful restraint: "No person, without privilege to do so, shall knowingly restrain another of his liberty." In her statement to Deputy Malone, Ms. Reed stated that appellant would not allow her and Shayla to leave the house. Additionally, Shayla testified that appellant would not let her and Ms. Reed leave the house.
 {¶ 15} Ordinarily, an appellate court will not second-guess a jury's decision regarding witness credibility. See State v.Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277 ("The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact."); Statev. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (stating that the trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it). In the case sub judice, the jury obviously believed the testimony implicating appellant and disbelieved Ms. Reed's testimony that recanted her prior statements. We recognize that Ms. Reed's decision to recant her earlier statements and testify that appellant did not commit any criminal acts creates conflicting evidence. Thus, the trier of fact must hear and resolve the evidence and assess witness credibility in order to determine whether appellant violated the statutes. A trier of fact may choose to believe all, part or none of the testimony of any witness who appears before the trier of fact. Thus, in the case sub judice we do not believe that the jury lost its way and created a manifest miscarriage of justice.
 {¶ 16} Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.
 II {¶ 17} In his second assignment of error, appellant asserts that the trial court erred by using a computer game to generate a random number in order to choose the alternate juror. Appellant notes that trial counsel did not object to the court's procedure, but asserts that the court committed plain error or that trial counsel's failure to object constitutes ineffective assistance of counsel.
 {¶ 18} Initially, we note that trial counsel did not object to the method the court used to select the alternate juror and, thus, appellant has waived all but plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g.,State v. Noling, 98 Ohio St.3d 44, 56, 2002-Ohio-7044,781 N.E.2d 88; State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240; State v. Sanders (2001), 92 Ohio St.3d 245,257, 750 N.E.2d 90; State v. Hill (2001), 92 Ohio St.3d 191,200, 749 N.E.2d 274. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111, 559 N.E.2d 710; see, also, State v. Long
(1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes, 94 Ohio St.3d at 27 (quoting UnitedStates v. Olano (1993), 507 U.S. 725, 736, 113 S.Ct. 1770,123 L.Ed.2d 508, quoting United States v. Atkinson (1936),297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555).
 {¶ 19} In the case sub judice, although the trial court's decision to use a computer game to generate a random (rather than draw a random number from a pill bottle or a hat, etc.) number and to select the alternate juror may not have been ideal, we do not believe that it constitutes error, plain or otherwise. The trial court's procedure did not affect the trial's outcome. The record reveals that appellant received a fair trial held before an impartial jury.
 {¶ 20} We further disagree with appellant's argument that the court erred by selecting the alternate at the end of the case, in violation of Crim.R. 24.[3] As the prosecution notes, the rule does not prohibit the court from selecting the alternate juror at the end of the case. In fact, the American Bar Association recommends selecting alternate jurors at the conclusion of the case. See "American Bar Association, Adopted by the House of Delegates," February 14, 2005, Principle 11, Section G.7 (stating that "[t]he status of jurors as regular jurors or as alternates should be determined through random selection at the time for jury deliberation"). We agree with the trial court's rationale that selecting the alternate juror at the close of evidence rather than prior to opening statements encourages all jurors to pay careful attention to the evidence adduced at trial.
 {¶ 21} For these same reasons, appellant has failed to show that trial counsel was ineffective for failing to object to the court's procedure in selecting the alternate. In order to reverse a conviction on ineffective assistance of counsel grounds, a defendant must show: (1) that his counsel's performance was deficient; and (2) that such deficient performance prejudiced the defense so as to deprive him of a fair trial. See Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904; State v. Goff (1998), 82 Ohio St.3d 123, 139,694 N.E.2d 916. A reviewing court need not analyze both prongs if one prong disposes of the ineffectiveness claim. See State v. Madrigal
(2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52; State v. Loza
(1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082.
 {¶ 22} As we stated above, we do not believe that the trial court's procedure deprived appellant of a fair trial. Thus, appellant suffered no prejudice and trial counsel's failure to object to the procedure did not deprive appellant of a fair trial.
 {¶ 23} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion.
[1] The record contains inconsistent spellings of Shayla's name: Shailah and Shayla. We use the spelling as it appears in the trial transcript, Shayla.
[2] We note that after appellant filed his notice of appeal he filed a new trial motion. We note that a trial court lacks jurisdiction to consider a new trial motion if the defendant already has filed a notice of appeal. See State v. Harmon,
Summit Dist. No. 21465, 2003-Ohio-5052, at ¶ 9 (stating that "[w]hen a defendant has filed a direct appeal, the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment," that a motion for a new trial is inconsistent with a notice of appeal, and that a notice of a direct appeal divests the trial court of jurisdiction to consider a motion for a new trial).
[3] Crim.R. 24(G)(1) provides:
The court may direct that not more than six jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, have the same qualifications, be subject to the same examination and challenges, take the same oath, and have the same functions, powers, facilities, and privileges as the regular jurors. Except in capital cases, an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each party is entitled to one peremptory challenge in addition to those otherwise allowed if one or two alternate jurors are to be impaneled, two peremptory challenges if three or four alternate jurors are to be impaneled, and three peremptory challenges if five or six alternative jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by this rule may not be used against an alternate juror.