OPINION
{¶ 1} John A. Hunt, defendant-appellant, appeals from the judgment of the Franklin County Court of Common Pleas in which the court found appellant guilty, pursuant to a jury trial, of domestic violence, in violation of R.C. 2919.25, which is a fourth-degree felony.
 {¶ 2} In September 2005, appellant and Telese Mitchell began dating, and, in November 2005, appellant moved into Mitchell's Columbus, Ohio home with her and her four children. On June 3, 2006, Mitchell told appellant to leave her home, as she believed appellant had used her credit card without her permission. Over the ensuing weekend, *Page 2 
appellant called Mitchell on the telephone several times and came to the house late one night and pounded on the door, but Mitchell would not allow him to enter.
 {¶ 3} On the morning of June 6, 2006, appellant telephoned Mitchell to arrange a time he could retrieve his belongings from the home. Wanting to avoid any confrontation, Mitchell told appellant to contact her brother, Rodney Whitlow, to arrange a time. After taking her children to school, Mitchell arrived back at her home, and appellant called her repeatedly, asking if he could get his clothes for work. Mitchell told appellant again to contact her brother. Concerned that appellant may come over anyway, Mitchell asked her brother to come to her house.
 {¶ 4} While waiting for her brother at her home, Mitchell saw appellant arrive at the house. She ran into her house, but appellant punched out a plastic window pane on her door, reached inside, and unlocked the door. At about the same time, Mitchell pushed the speed dial on her cellular phone and dialed her cousin, Ralph Whitlow, who heard some of the ensuing events over the phone. Appellant grabbed Mitchell, threw her to the ground, choked her, threatened her, and accused her of sleeping with another man the prior weekend. When Mitchell told appellant that her brother was on the way over, appellant went to the window, and Mitchell tried to escape. Appellant then threw her against her fireplace. When Mitchell's brother and his cousin, Calvin, arrived, appellant left the home in his vehicle. Mitchell called 911, and appellant was apprehended by police in his car a short distance away.
 {¶ 5} A grand jury indicted appellant on one count of domestic violence with specifications, and a jury trial was held October 11, 2006. After several days of trial, on October 16, 2006, the jury found appellant guilty as charged in the indictment. A *Page 3 
sentencing hearing was held October 17, 2006, and the trial court issued a judgment entry October 18, 2006, in which it sentenced appellant to the maximum term of 18 months of incarceration. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] THE TRIAL COURT ERRED IN ADMITTING THE LETTER THAT APPELLANT WROTE TO THE PROSECUTING WITNESS FROM [JAIL], ALTHOUGH IT MAY BE RELEVANT, ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE IN VIOLATION OF EVIDENCE RULE 403(A).
 [II] THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} Appellant argues in his first assignment of error that the trial court erred when it admitted a letter that appellant wrote to Mitchell from jail on June 24, 2006. After redacting portions of the letter that referred to appellant's parole status and criminal history, the trial court found it admissible as an admission of a party-opponent, pursuant to Evid.R. 801(D)(2). In the letter, appellant wrote:
 Hi baby:
 I got your letter yesterday and it really touch[ed] my heart to hear from you, Telese. I have never lied to you about the way I feel 4 you. [T]he last 8 months has been the best of my life. "I love you with all my heart."
 * * * I know you're mad at me[.] * * * I'm sorry I hurt you [and] believe me everyday I wake up * * * not at your side I hurt.
 There isn't anything I can say about what happen[ed] on June 6. All I can say is that I'm sorry and I hope you can find it in your heart to forgive me my love.
 I have no idea what you're talking about when you said something about Allyson. I don't give a damn about her. All I want is you in my life. What Rodney are u talking about? Well baby I *Page 4 
will let you go[.] Stop crying [and] please open up to me[.] I love you.
 {¶ 7} Generally, a trial court enjoys broad discretion in admitting or excluding evidence, and that decision will not be reversed on appeal absent a finding of abuse of discretion. State v. Williams (1982),7 Ohio App.3d 160, paragraph one of the syllabus. The term "abuse of discretion" connotes more than an error of law; it implies that the court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 8} In the present case, appellant's only argument is that, pursuant to Evid.R. 403(A), the probative value of the letter was substantially outweighed by the prejudice of the implication that arose from its contents, particularly that appellant was apologizing for assaulting Mitchell when other inferences from the apology could be drawn. Appellant claims that, although he alludes to hurting her in the letter, it is not clear that he is apologizing for physically hurting her on June 6, 2006.
 {¶ 9} Pursuant to Evid.R. 403(A), evidence, although relevant, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, of misleading the jury, or by the needless presentation of cumulative evidence. We find the trial court did not abuse its discretion in admitting the letter. Evid.R. 402 provides that all relevant evidence is admissible, and appellant concedes that the letter has some relevancy. To be admissible, relevant evidence must have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. The letter here was relevant for the obvious reason that, if the *Page 5 
statements contained therein are construed in a certain manner, they would tend to make it more probable that appellant physically assaulted Mitchell.
 {¶ 10} However, appellant asserts that the letter can be interpreted in more than one manner. Although we agree with appellant that the statements in the letter were not necessarily explicit confessions that he caused Mitchell physical injury, such does not render them inadmissible. Evid.R. 403(A) relates to admissibility, not credibility, weight, or evidentiary interpretation. See State v. Bennett, Scioto App. No. 05CA2997, 2006-Ohio-2757, at ¶ 28. The jury was free to construe the contents of the letter as it wished, and if it interpreted the statements to be an admission of guilt for the present crime, then clearly the letter would be relevant and highly probative. Despite the varying interpretations that might be applied to the contents of the letter, it is the function of the jury to weigh competing inferences and accept the ones it finds most reasonable. State v. Vondenberg (1980),61 Ohio St.2d 285.
 {¶ 11} Further, although appellant complains of the "prejudice" resulting from the letter, he makes no argument about precisely how the letter's probative value was substantially outweighed by the danger of unfair prejudice. Evidence is not "unfair" merely because it is detrimental to one side of the case. Evid.R. 403(A) deals with unfair prejudice, not prejudice in general, as the purpose of most of a prosecutor's evidence is to incriminate the defendant and is, thus, prejudicial to him. State v. Townsend, Mahoning App. No. 04 MA 110,2005-Ohio-6945, at ¶ 61. We also note that, although appellant claims the letter alludes to a possible relationship with another woman named "Allison," such a person was never identified by any of the witnesses in the case, and the reference to her was highly ambiguous. Thus, we also find no readily identifiable prejudicial impact *Page 6 
in this respect. For these reasons, we find the probative value of the letter was not substantially outweighed by unfair prejudice. Therefore, appellant's first assignment of error is overruled.
 {¶ 12} Appellant argues in his second assignment of error that the judgment was against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v.Getsy (1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 13} Appellant was indicted for violating R.C. 2919.25, which provides, in pertinent part: *Page 7 
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 (B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 14} After a review of the evidence and testimony presented at trial, we find the jury's verdict was not against the manifest weight of the evidence. Appellant's main argument is that the case rested primarily upon circumstantial evidence. We agree that much of the evidence that appellant caused physical harm was circumstantial. Rodney Whitlow testified that his sister called him on the morning of June 6, 2006, and asked him if he could come to her home while appellant was there to remove his belongings. When Whitlow arrived at Mitchell's house, he witnessed appellant exit the house, followed by Mitchell. Mitchell's face was bruised, her lips were swollen, she had scratches on her neck, and she was crying. Ralph Whitlow testified that, on the morning of June 6, 2006, Mitchell telephoned him, and, although he and Mitchell did not talk, he could hear she was distressed and frantic, yelling "stop it" and "leave me alone," while appellant yelled in the background. When Rodney arrived at Mitchell's house about 15 minutes later, he saw Mitchell on her porch, and she had a swollen lip. Ryan Sigman, an officer for the Columbus Police Department, testified that one photograph he took at the scene showed a pane on the front door missing. Another of Sigman's photos showed Mitchell had a "busted lip," scratches on her finger, and bumps on her head. He noted on his report that Mitchell stated she was strangled and choked. Further, Bradley Foss, an officer for the Columbus Police Department, testified that appellant had no injuries or marks on him after the incident. *Page 8 
 {¶ 15} Despite the fact that this evidence is circumstantial, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. State v. Richey (1992), 64 Ohio St.3d 353, 363. Circumstantial evidence also carries the same weight and should be given the same deference as direct evidence. State v. Jenks (1991),61 Ohio St.3d 259. We find the above testimony and photographic evidence regarding Mitchell's swollen lip, scratches, and bumps provide compelling circumstantial evidence that appellant was the source of Mitchell's physical harm. See State v. Wells, Warren App. No. CA2006-02-029, 2007-Ohio-1362 (testimony that the victim had red marks on her skin is circumstantial evidence to support conviction for domestic violence). Further, although there were no witnesses to the actual physical assault, Rodney and Officer Sigman witnessed Mitchell's physical injuries immediately after the incident, which also is convincing circumstantial evidence of appellant's attack of Mitchell. See State v. Parish, Washington App. No. 05CA14, 2005-Ohio-7109
(although neither the victim's father nor the responding police officer directly witnessed the assault, that they witnessed the victim's bruises, marks, and swelling shortly after the incident provided circumstantial evidence that domestic violence occurred). Mitchell's injuries were also inconsistent with those that could be self-inflicted, and appellant presented no evidence that they were self-inflicted.State v. Tietge, Montgomery App. No. 20766, 2006-Ohio-235, at ¶ 61-62
(affirming trial court's finding that the defendant's allegation of self-inflicted injuries is not supported by any other evidence). Additionally, that appellant was the party who caused Mitchell's injuries was supported by the surrounding circumstances, including evidence that appellant had been angry with Mitchell, and that Mitchell was heard over the phone *Page 9 
screaming at appellant to "stop." Thus, we find all of this circumstantial evidence provided substantial evidence to demonstrate the essential elements of domestic violence.
 {¶ 16} Appellant also complains that the only direct evidence of the physical assault was Mitchell's testimony. Mitchell testified that appellant telephoned her at 8:45 a.m. on June 6, 2006. Appellant asked if he could come to the house to get work clothes. She told him he could not, and they argued over the course of several phone calls. As she had told him several times before in the days leading up to the present incident, she directed appellant to call her brother to get a key and his belongings while she was not home. Mitchell then called her brother and told him to come to her house in case appellant came over. Appellant arrived at her house and punched out a plastic covering on the door. He unlocked the door and pushed the door open. When he got inside, he threw Mitchell onto the floor by grabbing her neck. He got on top of her and accused her of being with another man over the weekend. As the two struggled and argued in different parts of the room, he told her he was going to kill her. He also pushed her against the fireplace, threw her into moving boxes, and held her in a chokehold. She testified she could not remember if appellant ever hit her with a hand or fist because the whole incident happened quickly, and she was trying to get away from him and struggling. Using the speed dial on her phone, she was able to dial her cousin Ralph's phone number. She was not able to talk and did not know if Ralph ever answered. Appellant left her house and went to his car at the same time Rodney and Calvin arrived at the house. After appellant argued with Rodney and Calvin, appellant drove away. At this point, blood was pouring from Mitchell's mouth, although she did not know exactly what had caused the injury. She also had two bumps on her head. She admitted that, in her statement to police, she *Page 10 
stated nothing about being thrown on the ground, thrown into boxes, or being choked. She also explained that the statement was only a summary, and she was crying and upset when she wrote it.
 {¶ 17} Appellant asserts that Mitchell's testimony was not credible, as she could not remember if she was physically struck by appellant, and the deteriorating relationship between the two made her exaggerate her claims. However, the jury was in the best position to assess the credibility of these witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Although a deteriorating relationship between Mitchell and appellant could have motivated Mitchell to exaggerate the facts, the record reveals nothing to support such a theory. Also, that Mitchell could not remember if she was ever actually physically struck by appellant, or whether her injuries were the result of his throwing her against various objects, is not unbelievable or unexpected, given that the event happened very fast and there were various forms of physical contact. Further, we reject appellant's claim that Mitchell's injuries did not match the allegations in her testimony. Mitchell testified she had two bumps on her head. Rodney testified that Mitchell's face was bruised, her lips were swollen, and she had scratches on her neck. The photographs taken by the police show Mitchell had a swollen lip, scratches on her finger, and bumps on her head. These injuries are all consistent with Mitchell's testimony that she was grabbed by the neck, thrown to the ground, thrown against a fireplace, thrown against boxes, and held in a chokehold. Therefore, viewing all the reasonable inferences that arise from the evidence and having no reason to disturb the weight given to this evidence by the jury, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice. With no compelling reason to question the state's *Page 11 
evidence and testimony elicited at trial from its witnesses, we can only conclude that the testimony of the witnesses was truthful. Thus, the jury's verdict finding appellant guilty of domestic violence was not against the manifest weight of the evidence. For these reasons, appellant's second assignment of error is overruled.
 {¶ 18} Accordingly, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BRYANT and McGRATH, JJ., concur. *Page 1