OPINION
{¶ 1} Plaintiff-appellant, Columbia Gas of Ohio, Inc., appeals from a jury verdict in the Jefferson County Common Pleas Court in favor of defendants-appellees, RSV, Inc., RSV Trucking, Inc., and Robert S. Vukelic, on appellant's claims of trespass and negligence.
 {¶ 2} On April 2, 1993, Paul and Virginia Hatcher granted appellant a general easement over approximately 25 acres of land. The Hatchers had used part of their land as a landfill. The easement granted appellant the right to operate, maintain, and repair a natural gas pipeline running through the land without restriction or limitation. The gas pipeline was a high-pressure line which served as a major feed to customers in the Steubenville area.
 {¶ 3} In 1994, the Hatchers sold their land to Pine Hollow C DD Inc. (Pine Hollow), a corporation controlled by Vukelic. Pine Hollow used the land to operate a landfill business for some time. The landfill business subsequently operated for several years under another corporation controlled by Vukelic, known as RSV Trucking, Inc.
 {¶ 4} In 2001, the Environmental Protection Agency (EPA) required appellees to construct a water diversion channel to direct storm water away from the landfill site. Appellees retained Jeffrey Oinonen, an engineer, to construct a 60-inch storm water pipeline to divert water from the site. During the construction process, Oinonen encountered 30 feet of solid rock in the bed where the pipeline was to be installed. Therefore, blasting was required to remove the rock in order to properly install the pipeline. However, Oinonen was concerned because the excavating was to occur underneath the gas pipeline. Oinonen notified appellant of the situation.
 {¶ 5} Appellant had concerns regarding the blasting around the gas pipeline. At a meeting held September 11, 2001, appellant, the EPA, and the Public Utilities Commission concluded that the pipeline had to be relocated. The EPA instructed that no blasting was to occur until the pipeline was relocated. The EPA further instructed appellant that the pipeline needed to be relocated by the end of 2001, so that appellees could install the water diversion channel in a timely manner.
 {¶ 6} After considering several options for the location of the new pipeline, appellant decided to relocate the pipeline south along State Route 213, around the southern portion of the landfill, and north up Backbone Ridge Road. The relocation project commenced on October 22, 2001, and was completed on December 19, 2001. According to appellant, the total cost of the relocation was $347,763.92.
 {¶ 7} In early December 2001, a landslide occurred along Backbone Ridge Road. Appellant was concerned about the safety of the gas pipeline, and continually monitored it to ensure that it was not affected by the slippage along Backbone Ridge Road. The road eventually began to slip in close proximity to the gas pipeline. Therefore, appellant determined that due to the worsening conditions, the portion of the gas pipeline along Backbone Ridge Road had to be relocated. Appellant relocated this portion of the gas pipeline along State Route 7. This second relocation project along State Route 7 commenced in November 2003 and was completed in January 2004. The total cost of the second relocation was $800,228.
 {¶ 8} In the meantime, on December 16, 2002, appellant filed a complaint against appellees asserting trespass and negligence. Appellant asserted that appellees intruded upon its right-of-way causing it to expend money to relocate its gas line.
 {¶ 9} The case was heard before a jury in March 2005. In a majority decision, six out of eight jurors returned a verdict in favor of appellees. Appellant moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. After a hearing, the court denied both of appellant's motions. Appellant filed this timely appeal on July 15, 2005.
 {¶ 10} Appellant asserts six assignments of error, the first of which states:
 {¶ 11} "THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} A judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Willett v. Felger (Mar. 29, 1999), 7th Dist. No. 96CP-40; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo, 70 Ohio St.3d at 226.
 {¶ 13} Appellant asserted two claims, trespass and negligence. To prevail on a claim of trespass, the plaintiff must prove: "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 716, 622 N.E.2d 1153. A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages.Anderson v. St. Francis-St. George Hosp., Inc. (1996), 77 Ohio St.3d 82,84, 671 N.E.2d 225.
 {¶ 14} Appellant claims that the jury verdict is against the manifest weight of the evidence. First, appellant claims that the evidence demonstrated that appellees were liable for the relocation of the gas pipeline.
 {¶ 15} Appellant's easement states, in part:
 {¶ 16} "The Grantors warrant that, to the best of their knowledge, the lands encompassed by this easement have not been used as a dump site and contain no substances or materials which if disturbed would cause or threaten to cause impairment to human health or the environment." (Pl. Ex. 9).
 {¶ 17} Appellees argued at trial that the land encompassing the easement was being used as a landfill site when the easement was granted, and that the Grantors and appellant knew of this activity. They offered several exhibits to support their position. (See Def. Ex. I, J, and K). Additionally, Christine Maynard, a senior engineer with appellant, and David Webb, a field operations leader for appellant, acknowledged that appellant knew of the landfill in 1993. (Tr. 94, 310). And Vukelic testified that the Hatchers had used their land for dumping before he acquired it. (Tr. 361). Therefore, appellees argued that the easement was breached the day it was signed. Thus, appellees asserted that they should not be held liable for the relocation of the gas pipeline because the easement was interfered with the moment it was installed.
 {¶ 18} Appellant, on the other hand, contends that as a matter of law, the easement did not encompass the entire property, but rather only that portion of the property immediately surrounding the gas pipeline. Therefore, appellant argues that even if a portion of the land was used as a landfill at the time the easement was granted, there is no evidence of dumping activities occurring around the gas pipeline in 1993. In fact, Maynard testified that the gas pipeline was installed through virgin soil in 1993. (Tr. 333). Webb also testified that there was no debris on the ground in 1993 where the gas pipeline was originally installed, and that it was a fairly clean area. (Tr. 91). Thus, appellant argues that the easement was not interfered with at the time the easement was granted, and therefore the easement was not breached, and appellees should accordingly be held liable.
 {¶ 19} However, the jury could have concluded that the easement covered the entire property, and that because appellant knew of the dumping activities occurring on the land before it installed the original pipeline in 1993, the easement was breached the day it was signed. Thus, the jury could have found that appellees were not liable for the relocation of the gas pipeline.
 {¶ 20} Second, appellant claims that appellees interfered with the gas pipeline. Therefore, appellant argues that it was necessary to relocate the pipeline. Appellees, on the other hand, assert that they did not interfere with the gas pipeline.
 {¶ 21} It appears that the gas pipeline was ultimately relocated because of concerns about blasting occurring around the pipeline. Maynard testified that appellant has a blasting procedure that requires its employees to walk the pipeline to determine if the blasting has caused any leaks. (Tr. 307). To determine whether a gas pipeline is leaking, appellant performs tests to detect methane. (Tr. 307). However, landfills also produce methane, and there was 80 to 100 feet of debris piled on top of parts of the pipeline. (Tr. 307-308). Therefore, Maynard testified that appellant was concerned that it would not be able to discern whether the methane was caused by the landfill or from a gas pipeline leak. (Tr. 307-308). Thus, appellant was concerned that it would not be able to tell if the gas pipeline was leaking. (Tr. 307-308).
 {¶ 22} Maynard testified that appellant then proposed to drill down into the landfill to conduct a proper leakage survey. (Tr. 308). However, Maynard stated that the EPA would not allow appellant to drill down into the landfill due to safety issues such as underground fires and health concerns for the crew conducting the survey. (Tr. 308). Therefore, appellant would not be able to properly follow the company blasting procedure to determine whether the blasting caused any gas leakage.
 {¶ 23} Craig Walkenspaw, a district engineer and environmental specialist for the EPA, testified that the EPA also had concerns regarding the blasting in close proximity to the gas pipeline. (Tr. 238). Maynard testified that at a meeting held September 11, 2001, appellant, the EPA, and the Public Utilities Commission all came to the conclusion that the pipeline had to be relocated. (Tr. 308-309). Maynard stated that the EPA instructed appellant that the pipeline needed to be relocated by the end of 2001 so that appellees could install the water diversion channel in a timely manner. (Tr. 309).
 {¶ 24} Appellant wrote a letter to appellees dated September 28, 2001, indicating that appellees had an opportunity to remove the debris piled on top of the gas pipeline to avoid its relocation. (Tr. 384, 405; Def. Ex. C). The letter stated that appellees had until December 2001 to remove the debris, and that appellees had until October 8, 2001, to notify appellant of their intentions. (Tr. 324). According to Maynard, appellees never responded to appellant's letter. (Tr. 326). Therefore, on October 22, 2001, appellant began to relocate the pipeline. (Tr. 324-25).
 {¶ 25} Appellant also presented other issues as to why the gas pipeline should have been relocated. For instance, appellant presented evidence of underground fires within the land encompassing the easement. (Tr. 216). Walkenspaw testified that there was concern about the sub-surface fires because of the gas pipeline running through the property. (Tr. 217). However, no evidence was produced to show that the fires were in close proximity to the gas pipeline, or that the fires presented a threat to the integrity of the pipeline. (Tr. 250-51).
 {¶ 26} In addition, appellant presented witnesses who testified that the gas pipeline was not accessible to maintain or repair because of the debris piled on top of it. However, James Blake, appellant's construction leader for northern Ohio, testified that there are portions of the relocated gas pipeline that are currently inaccessible. (Tr. 282). Blake explained this apparent discrepancy by testifying that the newly relocated gas pipeline was much less likely to need repairing than the old gas pipeline because a more sophisticated method of installation was used for the new pipeline. (Tr. 276-85). Appellant took extra precautions and spent extra money to ensure the integrity of the new, relocated gas pipeline. (Tr. 282). Blake further testified that "we [appellant] should not have any problems with this [new] line." (Tr. 285)
 {¶ 27} Appellees, on the other hand, maintained that the pipeline did not need to be relocated. Vukelic was the sole witness for appellees. He testified that there was no damage to the gas pipeline or disruption of service to the public prior to the relocation. (Tr. 379). Further, Walkenspaw testified that appellees' excavation did not disrupt service or compromise the integrity of the gas line. (Tr. 251-53). And James Weikard, a field operation leader for appellant, testified that there was never an emergency involving the gas line, that there were no leaks, and that there was no loss of service to any customers. (Tr. 154).
 {¶ 28} The jury is the ultimate finder of fact, and can choose to believe or disbelieve the testimony of the witnesses. This court is not in a position to substitute its judgment for that of the jurors. Conceivably, the jury could have concluded that because appellees did not damage the gas pipeline or disrupt the service to appellant's customers, appellees did not interfere with the pipeline. Additionally, they could have concluded that appellant moved the gas line at the direction of the EPA.
 {¶ 29} Finally, appellant claims that it is entitled to some amount of damages. There was testimony at trial directed at the issue of mitigating damages. Appellant argues that if this court finds that appellees should be held liable, it should be entitled to some amount of monetary damages, even if it failed to properly mitigate damages.
 {¶ 30} Since we have concluded that the jury's verdict was not against the manifest weight of the evidence, appellant was not entitled to any damages.
 {¶ 31} Based on the above evidence, the jury could have concluded that the easement was breached the day it was signed and that appellees were not responsible for the gas pipeline's relocations. Accordingly, appellant's first assignment of error is without merit.
 {¶ 32} Appellant's fifth and sixth assignments of error are closely related to its first assignment of error. Thus, we will address them next. Appellant's fifth assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A NEW TRIAL."
 {¶ 34} A trial court cannot grant a new trial based on the fact that it would have decided the case differently. McCrae v. Wal-Mart Stores,Inc., 7th Dist. No. 04MA-275, 2005-Ohio-4472, at ¶ 13. It may grant a new trial only if there is no substantial, credible evidence upon which the jury could have arrived at its verdict. Id.
 {¶ 35} A trial court's decision granting or denying a new trial is reviewed for abuse of discretion. Koch v. Rist (2000),89 Ohio St.3d 250, 251, 730 N.E.2d 963. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 36} Based on the analysis in the first assignment of error, the court could have reasonably concluded, as have we, that there was credible evidence upon which the jury could have arrived at its verdict. Therefore, the court's decision was not unreasonable, arbitrary, or unconscionable. Thus, the trial court did not abuse its discretion by denying appellant's motion for a new trial. Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 37} Appellant's sixth assignment of error states:
 {¶ 38} "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."
 {¶ 39} When ruling on a motion for a judgment notwithstanding the verdict (JNOV), the trial court applies the same test applied to a motion for a directed verdict. Boardman Tp. Park Dist. v. BoardmanSupply Co. (Jan. 23, 2001), 7th Dist. No. 99-CA-297. The court shall grant a motion for a directed verdict when, "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ. R. 50(A)(4).
 {¶ 40} In considering a motion for a JNOV, courts do not consider the weight of the evidence or the witness credibility, but simply consider whether sufficient evidence exists to support the verdict. Wells FargoFinancial Leasing Inc. v. Gilliland, 4th Dist. Nos. 05CA2993, 05CA3006,2006-Ohio-2756, at ¶ 28. If substantial competent evidence supports the non-moving party, and reasonable minds could reach different conclusions about that evidence, the court must deny the motion. Id. at ¶ 27. Because a motion for a JNOV tests the legal sufficiency of the evidence and, therefore, presents a question of law, it is reviewed de novo.Julian v. Creekside Health Center, 7th Dist. No. 03-MA-21,2004-Ohio-3197, at ¶ 8.
 {¶ 41} Once again, based on the analysis in the first assignment of error, when construing the evidence most strongly in favor of appellees, the jury could have rendered a verdict against appellant. Therefore, the trial court did not err in denying appellant's motion for a JNOV. Accordingly, appellant's sixth assignment of error is without merit.
 {¶ 42} Appellant's second assignment of error states:
 {¶ 43} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO ADMIT EVIDENCE PROFFERED BY APPELLANT."
 {¶ 44} Appellant argues that the trial court improperly denied the admissibility of a September 21, 2001 EPA Order. The Order stated, in part, that "the Director of Ohio EPA has determined that the Pine Hollow C DD Landfill poses substantial and imminent threat to human health, safety and the environment." (Pl. Ex. 17 at ¶ 14.) In denying the Order's admissibility, the court reasoned that it did not show that any of the conditions affected the pipeline, and was therefore irrelevant to the case. (Tr. 352-56).
 {¶ 45} Appellant argues that the Order identifies conditions that had an effect or potential effect on the gas pipeline, such as surface fires, odors, illegal dumping of solid wastes, and waste piles reaching heights of 80 feet. Therefore, appellant argues that the Order was relevant to the case. Further, appellant contends that the relevancy of the Order outweighs the possible prejudice to appellees.
 {¶ 46} The decision to admit or exclude evidence rests in the trial court's sound discretion and we will not reverse its decision absent an abuse of that discretion. Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437, 715 N.E.2d 546.
 {¶ 47} Appellant's argument is not well taken. The Order does not specifically address any danger or potential danger to the gas pipeline caused by the landfill. Although the Order addresses health and safety issues of the landfill, it never speaks to the essential elements of this case, namely interference with the easement and damages caused by the interference. Further, given that appellees may have been engaged in activities that posed a threat to human health and safety, the admission of the Order could likely have been prejudicial to appellees. Therefore, given that the Order was not highly relevant to the case and was potentially prejudicial to appellees, we cannot conclude that the trial court abused its discretion in excluding it. Accordingly, appellant's second assignment of error is without merit.
 {¶ 48} Appellant's third assignment of error states:
 {¶ 49} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ADMITTING EVIDENCE PROFFERED BY APPELLEE."
 {¶ 50} Appellant objected at trial to the admission of three letters from the EPA to the Hatchers. (Tr. 419). Despite appellant's objection, the trial court allowed the letters into evidence. The letters reflected that the Hatchers' land was being used as an operational landfill prior to appellant obtaining the easement. (Def. Ex. I, J, K). The letters also reflected that temporary permits were issued from the State of Ohio permitting limited dumping activities on the land. Appellees used these letters to support their argument that appellant knew that the land was being used as a landfill when the easement was granted and, therefore, the easement was breached the day it was signed.
 {¶ 51} Appellant argues that these letters were irrelevant to the case, and the court should not have admitted them into evidence. Appellant asserts that although dumping activities may have been occurring on some portion of the land, no dumping activities were occurring on or around its easement. Appellant argues that as a matter of law, the easement did not include the entire property, but rather included the area surrounding the gas pipeline. Therefore, appellant contends that the letters addressing activities occurring on other portions of the land were irrelevant to the easement, and should not have been admitted.
 {¶ 52} The trial court could have reasonably concluded that the letters were relevant to this case in deciding whether or not appellees were liable for the relocation of the gas pipeline. The Hatchers warranted that, to the best of their knowledge, the lands encompassed by the easement were not being used as a dump site. In fact, the letters admitted by appellees suggested that the land was being used for dumping activity, and that the Hatchers knew of this activity. Further, even if the easement was confined to the location of the gas pipeline, the letters could still have been relevant. It was up to the jury to decide issues of fact, such as how close the dumping activity was to the gas pipeline, and to what extent the dumping activity was taking place. Therefore, the trial court did not abuse its discretion in admitting the letters into evidence. Accordingly, appellant's third assignment of error is without merit.
 {¶ 53} Appellant's fourth assignment of error states:
 {¶ 54} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GIVE A PROPER JURY INSTRUCTION REGARDING THE SCOPE AND NATURE OF APPELLANT'S EASEMENT."
 {¶ 55} The decision to give or refuse to give jury instructions is within the trial court's sound discretion. State v. McCleod (Dec. 12, 2001), 7th Dist. No. 00-JE-8, citing State v. Wolons (1989),44 Ohio St.3d 64, 68, 541 N.E.2d 443. Thus, we will not reverse a verdict on this basis absent a trial court's abuse of discretion.
 {¶ 56} The trial court should give a requested jury instruction when the instruction is a correct statement of the law pertaining to the facts of the case and when reasonable jurors might reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591, 575 N.E.2d 828. Upon review of jury instructions, the appellate court should determine whether the record contains evidence that might lead reasonable minds to reach the conclusion sought by the instruction. Id.
 {¶ 57} Appellant contends that as a matter of law, the easement did not encompass the entire property but only the land that the gas line crossed. Therefore, it requested that the court give the following instruction:
 {¶ 58} "The scope of an easement is generally defined by the language of the written instrument was [sic.] conveys the easement. The easement or right of way granted by Paul and Virginia Hatcher to Columbia Gas refers to the entire property and does not define the location of the natural gas pipeline. You may consider the evidence, including the photographs, drawings or other exhibits and the testimony to determine the location of the natural gas pipeline and therefore the scope of the easement."
 {¶ 59} The court denied this request.
 {¶ 60} When reviewing an omitted instruction, an appellate court must do so within the context of the entire charge and not in and of itself. Delbalso v. Kippen, 8th Dist. No. 86717, 2006-Ohio-2731, at ¶ 6, citing State v. Hardy (1971),28 Ohio St.2d 89, 92, 276 N.E.2d 247. We can only find that the trial court committed reversible error where we can find that the instructions given misled the jury. Id., citing Kokitka v. Ford Motor Co. (1995),73 Ohio St.3d 89, 93, 652 N.E.2d 671. Thus, we must not only consider appellant's requested instruction regarding the easement, but also the court's charge to the jury on the issue.
 {¶ 61} The court gave the following instructions regarding the easement:
 {¶ 62} "The easement. Under the easement the Plaintiff, Columbia Gas, had the right to lay pipe together with servicing connections over and through the premises herein described and to operate and maintain without restriction or limitation, to repair, replace or change the size of its pipe without interruption to service and may remove same together with valves and other necessary appurtenances. That's the rights that Columbia Gas had on the property.
 {¶ 63} "Under easement the Defendant, that would be Vukelic, had the right to fully use and enjoy said premises except for purposes heretofore granted to the said company and will not in any way impair the ability of the company to operate, maintain, repair, replace, or remove any such facility.
 {¶ 64} "And that language is taken directly from the easement that you have in evidence.
 {¶ 65} "Plaintiff claims that Defendant engaged in conduct that exceeded Defendant's rights under the easement and impaired Plaintiff's rights under the easement and required the relocation of a line. This is a question of fact for you to determine. If you find that the Plaintiff proved by a preponderance of the evidence that Defendant engaged in conduct that exceeded Defendant's rights under the easement and that Defendant impaired Plaintiff's rights under the easement and required relocation of the line then you will determine damages." (Tr. 473-74).
 {¶ 66} We cannot conclude that the trial court abused its discretion in giving the above instruction and refusing to give appellant's requested instruction. The court's instruction made clear to the jury that, under the easement, appellant had the right to maintain its gas line through appellees' property and that along with that right appellant could repair and replace the gas line without any limitations by appellees. The court also made clear that appellees were not to interfere with appellant's right to operate, maintain, repair, or replace its gas line. The court further instructed the jury what it had to find in order to determine that appellees interfered with appellant's rights under the easement. It clearly instructed the jury that if it found that appellees interfered with appellant's rights under the easement, which required appellant to move the gas line, then it was to move on to determine damages.
 {¶ 67} The court could have reasonably concluded that appellant's requested instruction was too narrow. It limited the jury to finding that the easement only encompassed the location of the natural gas pipeline. However, if this were true, then appellant would not have been able to move the pipeline to travel through another area of appellees' property as it did. Instead, it would have been restricted to following the same path as the original pipeline, if that was the extent of its easement.
 {¶ 68} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 69} For the reasons stated above, the trial court's decision is hereby affirmed.