[Cite as *State v. Lamb*, 2018-Ohio-1405.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 17CA3796 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| TOBY L. LAMB, II | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 04/10/18** |

_____
APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for Appellant.

Mark Kuhn, Scioto County Prosecuting Attorney, and Shane Tieman, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Toby Lamb, II, appeals his convictions and sentences for aggravated robbery and failure to comply with an order or signal of a police officer, after a jury found him guilty of both charges. On appeal, Appellant contends that 1) his trial counsel was ineffective for failing to properly advise him of a plea offer made by the State of Ohio; 2) his convictions for aggravated robbery and failure to comply were against the manifest weight and sufficiency of the evidence; 3) the trial court abused its discretion in admitting improper hearsay evidence from Detective Jodi Conkel and/or

failing to provide a proper curative instruction; 4) his speedy trial rights under R.C. 2945.71 were violated as a matter of law; 5) a mistrial should have been declared due to improper selection of the alternate juror at trial; 6) he was denied his Sixth Amendment right to a fair trial when his pro se motions went unaddressed; and 7) cumulative errors committed during his trial deprived him of a fair trial and require reversal of his conviction.

{¶2} Because we conclude Appellant's trial counsel was not ineffective with respect to advising him regarding his plea offers made by the State, Appellant's first assignment of error is overruled. And, we cannot conclude that Appellant's convictions were against the manifest weight of the evidence or not supported by sufficient evidence, his second assignment of error is overruled. Likewise, in light of our finding there was no plain error in the trial court's admission of alleged hearsay testimony by Detective Conkel or failure to issue a curative instruction, Appellant's third assignment of error is overruled. Similarly, having concluded Appellant did not preserve his speedy trial argument for purposes of appeal, his fourth assignment of error is overruled. Also, having determined the trial court did not err in failing to declare a mistrial, we must overrule Appellant's fifth assignment of error. Finally, having found no merit to Appellant's sixth or seventh assignments of error, they are also overruled.

## FACTS

{¶3} A review of the record reveals that on October 16, 2015, an African-American male entered the Super 8 Motel located in the Rosemount area of Scioto County, Ohio, at approximately 4:52 a.m. Accordingly to the hotel clerk, Andrea Meddock, the man was wearing a hunter green sweatshirt with no hood but with a towel or something around his head so that only his eyes could be seen, clear plastic gloves (the type used while dying hair, not medical gloves), and was holding a silver gun. He ordered the clerk to open the safe; however, she fled without giving him any money, and then he fled as well. Scioto County Sheriff's Deputy Brian Nolan responded to the scene, took the statement of the clerk, and radioed dispatch to issue an order to be on the lookout for the suspect. New Boston Police Department Officer Josh Carver was working in the Rosemount area at the time and heard the radio traffic indicating an armed robbery had occurred at the motel. He stationed himself at a gas station on the corner of Rosemount Road and State Route 139 and pointed his lights toward oncoming traffic so he could watch for the suspect.

{¶4} Shortly thereafter Officer Carver saw a vehicle coming down Rosemount Road with what he described as two African-American individuals. When the individual in the passenger seat completely laid the

seat down in what appeared to be an effort to hide, after passing a Sheriff's cruiser traveling the opposite direction with lights and sirens, Officer Carver decided to follow the vehicle. The vehicle, a maroon colored Pontiac Bonneville, initially stopped pursuant to a traffic stop initiated by Officer Carver; however, as Officer Carver approached the passenger side of the vehicle and was able to view an African-American male, the driver of the vehicle sped off. A high-speed chase ensued with the car stopping one time while on Route 139, at which point the driver of the vehicle jumped, or stumbled, out of the car. The passenger then got into the driver's seat and the chase continued. Officer Carver chased the vehicle down Route 139 and over Houston Hollow Road at speeds up to 80 M.P.H., around curvy and poorly lit residential areas. The chase ended with the vehicle flipping over. The suspect fled and was not apprehended. Upon doing an inventory of the vehicle, law enforcement recovered a hunter green sweatshirt with no hood, clear plastic, non-medical gloves, and a nickel-plated semi-automatic pistol.

{¶5} The original driver of the car, later determined to be an African-American female named Danielle Foster from Dayton, Ohio, was later picked up by the Sheriff's office and was taken to the jail for questioning. Detective Jodi Conkel interviewed Ms. Foster the next day at the jail. Ms. Foster initially told Detective Conkel she had agreed to drive an unknown

man to Scioto County to pick up money that was owed to him by a friend. During the interview, Ms. Foster told her she stopped at the McDonald's in Rosemount to get a drink through the drive-thru, at which point the man used her phone to call his friend to make arrangements, but that the friend did not answer. She further told her that the man then left for about fifteen to twenty minutes, but that she didn't know where he went. When he came back, he gave her directions over what appeared to be Rosemount Road and towards the area where Officer Carver was stationed. She explained that she was initially the driver of the vehicle and that she drove off after the traffic stop because the man held a gun to her.

{¶6} Upon further investigation, which included listening to jail calls, talking to someone who claimed to be Danielle Foster's sister, and speaking with the jail in Dayton, Ohio, where Ms. Foster had been held on a previous occasion, Detective Conkel confronted Ms. Foster again and stated she knew Appellant, Toby Lamb, II, was the individual that was with her. Ms. Foster admitted the same. Subsequent investigation, which included obtaining a DNA standard from Appellant, and testing of the items recovered from the vehicle, revealed that Appellant's DNA was located on the thumb of one of the gloves found in the car. While Appellant's DNA was not found on the

sweatshirt, he could not be excluded as a wearer of the shirt. No DNA testing was performed on the gun.

{¶7} Based upon these events and this evidence, Appellant, Toby Lamb II, was indicted on November 19, 2015, for one count of aggravated robbery, a first degree felony in violation of R.C. 2911.01(A)(1) and (C), along with a firearm specification pursuant to R.C. 2941.145(A). He was also indicted for one count of failure to comply with the order or signal of a police officer, a third degree felony in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), and one count of receiving stolen property, a fourth degree felony in violation of R.C. 2913.51(A) and (C). Appellant was not apprehended until June 17, 2016. Appellant was thereafter arraigned and counsel was appointed. The matter proceeded to a jury trial on March 6, 2017.[1]

{¶8} The record reveals that although the trial initially began and a jury was selected and seated on March 6, 2017, the trial judge came under a disability and the trial was not reconvened until March 13, 2017. Further, when the trial was reconvened, a visiting judge took over the case and heard the trial. The State introduced several witnesses at trial, including: 1)

---

[1] Despite being represented by counsel, Appellant filed two pro se motions prior to trial, including a motion to suppress and a motion for an evidentiary hearing. These motions were not disposed of until the trial court struck them from the record after the trial.

Andrea Meddock, the hotel clerk; 2) Deputy Brian Nolan, the Scioto County Sheriff's Deputy who first responded to the hotel and who later inventoried the vehicle; 3) Officer Josh Carver, the New Boston Police Officer who was involved in the high-speed chase; 4) Danielle Foster, Appellant's co-defendant; 5) Detective Dan Malone, the evidence officer with the Scioto County Sheriff's Department; 6) Devonie Herdeman, a forensic scientist in the DNA Section at the Ohio Bureau of Criminal Identification and Investigation (BCI); and 7) Detective Jodi Conkel, who interviewed Danielle Foster at the jail and later obtained DNA samples from Appellant. Appellant introduced only one witness, his son, Toby Lamb, III, who testified that his father had attended his freshman football game on the night in question, had stayed the night with him and his mother and then took him to school the next morning at 7:00 a.m. He also admitted on cross-examination that his mother owns a maroon Pontiac Bonneville and that it was reported stolen sometime between October 14 and October 16, 2015.

{¶9} The record further reveals that because it was the original trial judge's practice to do so, thirteen jurors were initially seated on the jury, rather than twelve, with the practice of randomly selecting one juror to be eliminated as an alternate prior to the start of deliberations. When it was time to eliminate the alternate juror, a number was drawn out of a basket,

and the juror whose number was drawn was the only African-American on the jury. At that point, defense counsel objected. However, the juror was eliminated and the matter was submitted to the remaining jurors. Appellant was ultimately convicted of aggravated robbery, with a firearm specification, and failure to comply with an order or signal of a police officer, as charged in the indictment.[2] The trial court then sentenced Appellant to an aggregate term of fifteen years in prison in an April 5, 2017 sentencing entry. It is from this judgment entry Appellant now brings his appeal, setting forth seven assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.     DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY ADVISE DEFENDANT OF A PLEA OFFER MADE BY THE STATE OF OHIO.

II.     APPELLANT'S CONVICTIONS FOR (A) AGGRAVATED ROBBERY AND (B) FAILURE TO COMPLY WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

III.    THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING IMPROPER HEARSAY EVIDENCE FROM DETECTIVE JODI CONKEL AND/OR FAILING TO PROVIDE A PROPER CURATIVE INSTRUCTION.

IV.    APPELLANT'S SPEEDY TRIAL RIGHTS UNDER O.R.C. 2945.71 WERE VIOLATED AS A MATTER OF LAW.

_____

[2] The third count of the indictment, receiving stolen property, was orally dismissed by the State during trial and was dismissed by the court in the written judgment entry dated March 16, 2017.

V.      A MISTRIAL SHOULD HAVE BEEN DECLARED DUE TO
        IMPROPER SELECTION OF THE ALTERNATE JUROR AT
        TRIAL.

VI.     APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHTS
        TO A FAIR TRIAL WHEN HIS PRO SE MOTIONS WENT
        UNADDRESSED.

VII.    CUMULATIVE ERRORS COMMITTED DURING THE
        APPELLANT'S TRIAL DEPRIVED HIM OF A FAIR TRIAL AND
        REQUIRE REVERSAL OF HIS CONVICTIONS."

ASSIGNMENT OF ERROR I

{¶10}  In his first assignment of error, Appellant contends that his trial counsel was ineffective in failing to properly advise him of a plea offer made by the State of Ohio.  More specifically, Appellant argues that a plea offer was discussed the morning of the first day of trial which involved him pleading to second degree felony robbery in exchange for a sentence of three years and nine months.  Appellant contends he advised his counsel he wanted to "sleep on it" but that when the trial resumed a week later with a different judge, the offer was no longer available.  Thus, Appellant does not claim his counsel failed to advise him of the terms of the plea offer, but rather that his counsel failed to advise him of the time limit in which to accept the plea offer.  The State denies such an offer was made.  Instead, the State contends that two formal offers were made and put on the record, both

of which were rejected by Appellant, and that neither of them involved a

sentence of three years and nine months or were made the morning of trial.

{¶11} Criminal defendants have a right to counsel, including a right

to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S.

759, 770, 90 S.Ct. 1441 (1970); *State v. Stout*, 4th Dist. Gallia No. 07CA5,

2008–Ohio–1366, ¶ 21. Further, criminal defendants are entitled to effective

assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S.

156, 162, 132 S.Ct. 1376 (2012). To establish constitutionally ineffective

assistance of counsel, a defendant must show (1) that his counsel's

performance was deficient and (2) that the deficient performance prejudiced

the defense and deprived him of a fair trial. *Strickland v. Washington*, 466

U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67,

752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d

916 (1998). "In order to show deficient performance, the defendant must

prove that counsel's performance fell below an objective level of reasonable

representation. To show prejudice, the defendant must show a reasonable

probability that, but for counsel's error, the result of the proceeding would

have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–

2815, 848 N.E.2d 810, ¶ 95 (citations omitted). "Failure to establish either

element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116,

2008–Ohio–968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–448, 721 N.E.2d 52, (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶12}  When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.  "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶13}  Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. *See*

*State v. Clark*, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002–Ohio–1597; *State v. Kuntz*, 4th Dist. Ross No. 1691, 1992 WL 42774.  To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 145, 132 S.Ct. 1399 (2012).

{¶14} The United States Supreme Court has held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye* at 147.  Defense counsel also must provide effective assistance when advising a defendant on whether to accept a plea offer. *Lafler* at 162-170; *State v. Fickenworth*, 10th Dist. Franklin No. 14AP–542, 2015–Ohio–1556, ¶ 9.  A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the deficient performance prong of the Strickland test. *Griffin v. United States* (C.A.6, 2003), 330 F.3d 733, 737; *Johnson v. Duckworth* (C.A.7, 1986), 793 F.2d 898, certiorari denied 479 U.S. 937, 107 S.Ct. 416 (1986) (criminal defense attorneys have a duty to

inform their clients of plea bargains proffered by the prosecution; failure to do so constitutes ineffective assistance under the Sixth and Fourteenth Amendments).

{¶15} Here, a review of the record reveals that two formal offers were made by the State and rejected by Appellant. There is no indication from the record before us that an offer involving a sentence of three years and nine months was ever made by the State. The only reference to such an offer appears in the sentencing hearing transcript and is in the form of an allegation made by Appellant himself. The State denies any offers, other than the two formal offers that were put on record, were made. Further, even if there was evidence that such an offer was made and that Appellant's trial counsel's performance was deficient in failing to advise Appellant of the time limit in which to accept the offer, Appellant has failed to show he was prejudiced as a result. Appellant has not alleged, either at the sentencing hearing when he first raised this issue, or on appeal, that he would have actually accepted the plea offer he describes. "To establish prejudice, appellant must show he would have accepted the plea offer had it been communicated to him." *State v. Hicks*, 12th Dist. Butler No. CA2002–08–198, 2003-Ohio-7210, ¶ 15; citing *Haley v. United States* (C.A.6, 2001), 3

Fed. Appx. 426, 2001 WL 133131, certiorari denied, 534 U.S. 1031, 122

S.Ct. 568.

{¶16}  Additionally, as explained in *State v. Moore*, 5th Dist. Stark

No. 2016CA00094, 2016-Ohio-7380, ¶ 21:

> "* * * it is well settled a trial court enjoys wide discretion in
> deciding whether to accept or reject a negotiated plea
> agreement. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct.
> 495, 30 L.Ed.2d 427 (1971); *Akron v. Ragsdale*, 61 Ohio
> App.2d 107, 109–10, 399 N.E.2d 119 (9th Dist.1978). Indeed, a
> defendant has no absolute right to have a guilty plea accepted.
> *Santobello* at 262, 92 S.Ct. 495, 30 L.Ed.2d 427; *Lafler v.
> Cooper*, 556 U.S. [156], 132 S.Ct. 1376, 1395, 182 L.Ed.2d 398
> (2012)."

Thus, consistent with the reasoning in *Moore*, Appellant has failed to present

any evidence the trial court would have accepted the plea bargain.

Therefore, even if counsel's performance was deficient, Appellant has not

established he was prejudiced by counsel's performance.  Accordingly, we

find no merit to Appellant's first assignment of error and it is overruled.

ASSIGNMENT OF ERROR II

{¶17}  In his second assignment of error, Appellant contends that his

convictions for aggravated robbery and failure to comply were against the

manifest weight and sufficiency of the evidence.  Appellant's arguments

primarily allege that the State failed to prove his identity in the commission

of the crimes, and that the testimony of his co-defendant, Danielle Foster, is

unreliable and should have been viewed by the jury with grave suspicion.

The State contends that considering the accomplice testimony and other

corroborating evidence in a light most favorable to the State, the jury could

have concluded that the State's case was adequately proven. The State

further argues that the jury did not lose its way.

{¶18} "When a court reviews a record for sufficiency, '[t]he relevant

inquiry is whether, after viewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.' " *State v.*

*Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of

the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The

court must defer to the trier of fact on questions of credibility and the weight

assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9,

2014-Ohio-4974, ¶ 22; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-

Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶19} In determining whether a criminal conviction is against the

manifest weight of the evidence, an appellate court must review the entire

record, weigh the evidence and all reasonable inferences, consider the

credibility of witnesses, and determine whether, in resolving conflicts in the

evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶20} "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶21} As indicated above, Appellant was convicted of one count of aggravated robbery with a gun specification and one count of failure to comply with an order or signal of a police officer, both in connection with the armed robbery of the Super 8 Motel in Scioto County and the high-speed chase that ensued thereafter. R.C. 2911.01 defines aggravated robbery and provides, in pertinent part, as follows:

"(A) No person, in attempting or committing a theft offense, as
defined in section 2913.01 of the Revised Code, or in fleeing
immediately after the attempt or offense, shall do any of the
following:
(1) Have a deadly weapon on or about the offender's person or
under the offender's control and either display the weapon,
brandish it, indicate that the offender possesses it, or use it[.]"

Additionally, R.C. 2941.145 governs specifications concerning use of

firearms to facilitate offenses and provides, in pertinent part, as follows:

"(A) Imposition of a three-year mandatory prison term upon an
offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised
Code is precluded unless the indictment, count in the indictment, or
information charging the offense specifies that the offender had a
firearm on or about the offender's person or under the offender's
control while committing the offense and displayed the firearm,
brandished the firearm, indicated that the offender possessed the
firearm, or used it to facilitate the offense. * * *"

{¶22} Further, R.C. 2921.331 defines failure to comply with an order

or signal of a police officer and provides, in pertinent part, as follows:

"(B) No person shall operate a motor vehicle so as willfully to
elude or flee a police officer after receiving a visible or audible
signal from a police officer to bring the person's motor vehicle
to a stop.
* * *
(C)(1) Whoever violates this section is guilty of failure to
comply with an order or signal of a police officer.
* * *
(5)(a) A violation of division (B) of this section is a felony of
the third degree if the jury or judge as trier of fact finds any of
the following by proof beyond a reasonable doubt:
* * *
(ii) The operation of the motor vehicle by the offender caused a
substantial risk of serious physical harm to persons or
property."

{¶23} Here, Appellant essentially contends that the State did not prove his identity as the perpetrator of the crimes at issue. He does not argue the State failed to prove any of the specific elements of these offenses, but instead argues the State failed to prove he was the person who committed the crimes. However, viewing the evidence in a light most favorable to the State, the jury was presented with the following testimony and evidence at trial: 1) hotel clerk Andrea Meddock testified an African-American male wearing a hunter green sweatshirt and clear plastic gloves presented himself at the Super 8 Motel on the night in question, holding a silver pistol and demanded money; 2) law enforcement testimony that a high-speed chase ensued thereafter on a curvy, winding road at night which resulted in a vehicle crash, and a subsequent search of the vehicle yielded a hunter green sweatshirt and clear plastic gloves; 3) DNA testing performed on these items revealed Appellant's DNA on one of the gloves, but did not indicate Appellant's DNA was on the sweatshirt; 4) expert testimony explained the lack of Appellant's DNA on the sweatshirt does not eliminate him as wearer of the shirt; 5) co-defendant Danielle Foster testified at trial and identified Appellant as the individual with her in the car on the night at issue, stating she parked at a McDonald's (which evidence revealed was right near the Super 8 Motel) and waited on him while he exited the car and

later returned, and then became involved in a high-speed chase; and 6) the vehicle involved in the high-speed chase, which contained an item with Appellant's DNA on it, was owned by Appellant's son's mother, who had reported the car stolen some time between October 14 and October 16, 2015. The jury also viewed videos of the hotel surveillance system and the cruiser cam and body cam footage from the officer involved in the high-speed chase.

{¶24} We find that the jury could have reasonably concluded, based upon this evidence, that the State proved each and every element of the offenses at issue, and proved Appellant was the individual who committed these offenses. Despite Appellant's argument that Danielle Foster's testimony should have been discounted, a review of the record reveals that the trial court properly instructed the jury with regard to its consideration of accomplice testimony as follows:

> "The testimony of an accomplice does not become inadmissible because of his or her complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his or her credibility and make that testimony subject to grave suspicion, and require that it be weighed with great caution."

Despite this admonition, it is clear the jury weighed the evidence and testimony, including the accomplice testimony in favor of the State, which was within its province to do as the trier of fact.

**{¶25}** In light of the foregoing, we cannot conclude that Appellant's

convictions are against the manifest weight of the evidence, that the jury lost

its way, or that Appellant's convictions were such a manifest miscarriage of

justice that they must be reversed.  Moreover, "[w]hen an appellate court

concludes that the weight of the evidence supports a defendant's conviction,

this conclusion necessarily also includes a finding that sufficient evidence

supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17,

2014-Ohio-3389, ¶ 27.  Having already determined that Appellant's

convictions are not against the manifest weight of the evidence, we

necessarily reject Appellant's additional claim that his convictions are not

supported by sufficient evidence.  Therefore, Appellant's second assignment

of error is overruled.

ASSIGNMENT OF ERROR III

**{¶26}** In his third assignment of error, Appellant contends the trial

court abused its discretion in admitting improper hearsay evidence from

Detective Jodi Conkel and/or failing to provide a proper curative instruction.

Appellant more specifically argues that Detective Conkel was improperly

permitted to testify to statements made to her by Appellant's co-defendant,

Danielle Foster, Danielle Foster's sister (who did not testify at trial), and also

regarding her investigation which revealed Appellant had visited Ms. Foster

while she was in jail in Dayton, Ohio. The State argues this testimony was merely cumulative to the trial testimony provided by Danielle Foster and already heard by the jury and that the admission of the Conkel's additional testimony was harmless error.

{¶27} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Richardson*, 4th Dist. Scioto No. 14CA3671, 2015-Ohio-4708, ¶ 62; quoting *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence. *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, ¶ 22; citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). To constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶28} With respect to the question of whether the trial court abused its discretion in failing to provide a curative instruction after the objection was finally made, we note the decision to give or refuse to give jury

instructions is within the trial court's sound discretion. *Columbia Gas of Ohio, Inc. v. R.S.V. Inc.*, 7th Dist. Jefferson No. 05JE29, 2006-Ohio-7064, ¶ 55; *State v. McCleod*, 7th Dist. Jefferson No. 00JE8, 2001 WL 1647305 (Dec. 12, 2001); citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Thus, we will not reverse a verdict on this basis absent a trial court's abuse of discretion. An inadequate instruction that misleads the jury constitutes reversible error. *Taylor, supra;* citing *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985). However, a defendant's "failure to object to improprieties in jury instructions waives error on appeal absent plain error." *State v. Johnson*, 40 N.E.3d 628, 2015-Ohio-3248, 40 N.E.3d 628, ¶ 112; quoting *State v. Canter*, 10th Dist. Franklin No. 01AP–531, 2002 WL 452461 (Mar. 26, 2002); citing *State v. Morrison*, 10th Dist. Franklin No. 01AP–714, 2001 WL 1662020 (Dec. 31, 2001). *See also State v. Lewis*, 4th Dist. Ross No. 14CA3467 2015-Ohio-4303.

{¶29} Here, the record reveals and Appellant concedes his trial counsel did not object to the complained-of portion of Detective Conkel's testimony until well after it was given and heard by the jury. The record further reveals that trial counsel did not request the trial court provide a curative instruction to the jury. Thus, these alleged errors may only be reviewed for plain error. Therefore, we are further governed by Crim.R.

52(B). "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Lewis, supra,* at ¶ 9; quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Lewis, supra;* citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

{¶30} Hearsay is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802. Evid.R. 801(D)(2)(a) provides that a statement is "not hearsay" if, "The statement is offered against a party and is * * * the party's own

statement * * *." The statements at issue herein are not Appellant's own statements, but rather are statements allegedly made by Appellant's co-defendant to law enforcement during the investigation of the offenses herein, as well as statements made by Appellant's co-defendant's sister implicating him.

{¶31} A review of the record indicates that Danielle Foster, although a co-defendant, testified at trial and was subject to cross-examination. Thus, as the State argues, the testimony given by Detective Conkel regarding statements made by Ms. Foster were largely cumulative to the testimony provided by Ms. Foster at trial. Therefore, we cannot conclude that it changed the outcome of the trial and resulted in plain error. With respect to Detective Conkel's testimony regarding her investigation of the crimes which led her to the discovery that Appellant had visited Ms. Foster previously when she was jailed in Dayton, we do not find this testimony constituted hearsay. It appears Detective Conkel's testimony served to illustrate and explain the steps taken during the course of her investigation, leading up to the point in which Appellant was charged. "[I]t is well-settled that statements offered by police officers to explain their conduct while investigating a crime are not hearsay because they are not offered for their truth, but rather, are offered as an explanation of the process of

investigation." *State v. Spires*, 4th Dist. Gallia No. 10CA10, 2011–Ohio–3661, ¶ 13; quoting *State v. Warren*, 8th Dist. Cuyahoga No. 83823, 2004–Ohio–5599 at ¶ 46; citing *State v. Price*, 80 Ohio App.3d 108, 110, 608 N.E.2d 1088 (1992); *State v. Braxton*, 102 Ohio App.3d 28, 49, 656 N.E.2d 970 (1995); *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (1987).  Thus, we find no error, let alone plain error, related to the admission of these statements.

{¶32}  Finally, we agree with Appellant that Detective Conkel's testimony indicating Danielle Foster's sister reported that Appellant was with Ms. Foster on the night of the crimes constituted improper hearsay and should not have been admitted into evidence, and that the facts presented herein are very similar to the facts we considered in *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629.  As noted in *Gerald*, although the admission or exclusion of evidence generally rests in the discretion of the trial court, "questions concerning evidentiary issues that also involve constitutional protections, including confrontation clause issues, should be reviewed de novo." *Gerald* at ¶ 59; citing *State v. Jeffers*, 4th Dist. No. 08CA7, 2009–Ohio–1672, ¶ 17; citing *State v. Hardison*, 9th Dist. Summit No. 23050, 2007–Ohio–366.

{¶33} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Supreme Court of the United States has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004); citing *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065 (1965). Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face." Before its admission, "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Crawford* at 68.

{¶34} The threshold inquiry is whether the challenged out-of-court statements were testimonial in nature and needed to be tested by confrontation. *See State v. Lewis*, 1st Dist. Hamilton Nos. C–050989 and C060010, 2007–Ohio–1485, ¶ 30. Statements are "testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006); *see also State v. Stahl*, 111 Ohio St.3d

186, 2006–Ohio–5482, 855 N.E.2d 834, paragraph one of the syllabus.

Here, similar to *Gerald*, there was no ongoing emergency, but rather, the circumstances indicate that the purpose of Detective Conkel's conversation with Danielle Foster's sister was to prove past events relevant for later prosecution. Therefore, we find the statements at issue to be testimonial.

{¶35} As noted in *Gerald* at ¶ 62, however, Confrontation Clause violations are subject to harmless error analysis. *See State v. Kraft*, 1st Dist. Hamilton No. C–060238, 2007–Ohio–2247, ¶ 67; citing *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir.2005). "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 78; citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824 (1967). However, the question of whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. *Conway* at ¶ 78. Rather, it is a question of whether there is a reasonable possibility that the evidence complained of might have contributed to the convictions. *Id.*; citing *Chapman* at 23.

{¶36} Here, Detective Conkel testified Appellant's co-defendant's sister told her that Appellant was the person with Danielle Foster on the

night at issue, thus implicating Appellant in the crimes. These statements constituted impermissible hearsay and should not have been admitted at trial and further, no curative or limiting instruction was requested or given. In *Gerald*, the focus of our analysis was on statements allegedly made by co-defendants that were repeated to the jury through Detective Conkel's testimony, and those co-defendants did not testify at trial and were not subject to cross-examination. Even so, we found the admission of the improper co-defendant testimony to be harmless beyond a reasonable doubt in *Gerald* in light of the fact we had already determined, without relying on the improper hearsay testimony, that Gerald's convictions were not against the manifest weight of the evidence. *Gerald* at ¶ 68.

{¶37} The focus of this portion of our analysis is not co-defendant statements admitted through law enforcement testimony of a co-defendant that did not testify at trial, as in *Gerald*, but rather the co-defendant's sister's statements, which were made to Detective Conkel during the course of her investigation. Nevertheless, we find the admission of Danielle Foster's sister's statements to be harmless beyond a reasonable doubt in light of the other evidence introduced by the State to establish Appellant's guilt, as discussed above, as well as our finding, much like in *Gerald,* that Appellant's convictions were not against the manifest weight of the

evidence. Further, in light of our plain error standard of review and Ms. Foster's testimony that Appellant was with her on the night these offenses occurred, as well as the DNA evidence linking Appellant to gloves matching the description of those worn during the robbery and found in the vehicle after the high-speed chase, we cannot conclude that admission of the co-defendant's sister's statement changed the outcome of the trial. Accordingly, we reject Appellant's argument that the trial court abused its discretion, or as we have discussed, committed plain error, in admitting this hearsay testimony and failing to provide, sua sponte, a curative instruction.

{¶38} Appellant further contends his trial counsel was ineffective for failing to object sooner and for failing to request a curative instruction. As set forth above, in order to establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington, supra,* at 687; *State v. Issa, supra,* at 67; *State v. Goff, supra,* at 139. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v.*

*Conway, supra,* at ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones, supra,* at ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal, supra,* at 389.

{¶39} Here, we have already found that the admission of testimony constituting hearsay, as well as testimony regarding the steps taken in Detective Conkel's investigation, did not change the outcome of the trial or result in plain error. We found likewise with respect to the failure to give a curative instruction. Having found none of these errors changed the outcome of the trial or resulted in plain error, we similarly conclude Appellant has not proven the prejudice required in order to demonstrate a claim of ineffective assistance of counsel. Accordingly, this alternative argument raised under Appellant's third assignment of error is also without merit. Having found no merit in the arguments raised under this assignment of error, it is overruled.

## ASSIGNMENT OF ERROR IV

{¶40} In his fourth assignment of error, Appellant contends that his speedy trial rights under R.C. 2945.71 were violated as a matter of law. The State contends that this assignment of error should be overruled because

Appellant was brought to trial within speedy trial limits.  Based upon the following, however, we disagree with the arguments of both parties.

{¶41}  R.C. 2945.73(B) states, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."  This Court has previously concluded that the statute requires the accused to file a motion to dismiss based upon speedy trial grounds prior to trial. *State v. Jones*, 4th Dist. Lawrence No. 07CA2, 2008-Ohio-304, ¶ 19; citing *State v. Thompson*, 97 Ohio App.3d 183, 186-187, 646 N.E.2d 499 (1994); *see also State v. Ross*, 4th Dist. Ross No. 04CA2780, 2005-Ohio-1888, ¶ 20.  Here, Appellant does not argue and there is no evidence in the record indicating that he filed a motion to dismiss based upon speedy trial grounds prior to trial.  His failure to do so results in a waiver of the issue on appeal. *Id.*; *see also State v. Talley*, 5th Dist. Richland No. 06CA93, 2007-Ohio-2902 (refusing to conduct plain error analysis when defendant failed to file a motion to dismiss on speedy trial grounds); *State v. Hurst*, 4th Dist. Washington No. 08CA43, 2009-Ohio-3127, ¶ 52; *State v. Ross*, 4th Dist. Ross No. 04CA2780, 2005-Ohio-1888, ¶ 19.

{¶42}  Accordingly, based upon the foregoing reasons, we hereby overrule Appellant's fourth assignment of error.

ASSIGNMENT OF ERROR V

{¶43}  In his fifth assignment of error, Appellant contends that a mistrial should have been declared due to improper selection of the alternate juror at trial.  We initially note that Appellant failed to request a mistrial at the trial court level and has therefore forfeited the issue, absent plain error. *State v. Ellison*, 2017-Ohio-284, 81 N.E.3d 853, ¶ 26; citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 152; *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104 ¶ 58 ("Failure to object constitutes forfeiture of any challenges on appeal except for plain error").

{¶44}  The test for plain error is stringent. *State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, 2016 WL 4441250, ¶ 30.  A party claiming plain error has the burden of demonstrating that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial. *Id.* at ¶ 30; citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31.  "We will notice plain error 'only to prevent a manifest miscarriage of justice.' " *Fouts* at ¶ 59; quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  "Reversal is warranted only if the outcome of the trial clearly would have been different

absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶45} As set forth above, this jury trial began with one judge, and had to be completed by a visiting judge because the original judge was unable to continue after the first day of trial, due to sudden illness or disability. A review of the record indicates that this particular trial court's procedure involves the seating of thirteen jurors instead of twelve for the entire trial, based upon the rationale that alternate jurors who are selected prior to trial may not pay close attention, and sometimes even sleep, during the trial. Rather than identifying the alternate juror at the beginning of trial, the court randomly draws a number out of a basket at the close of evidence and prior to deliberations, and eliminates the juror whose number is drawn. In this particular case, employing this procedure resulted in the elimination of the only African-American on the panel as the alternate juror.

{¶46} Further review of the record reveals that the original trial judge explained this procedure on the record at the time the jury was initially seated, and that Appellant failed to object to the procedure in general at that time. Because thirteen jurors had already been seated when the visiting judge took over the case, the new judge had to continue with this jury procedure. The record further reveals that Appellant failed to object to the

visiting judge employing the court's procedure at the time the alternate juror was actually eliminated just prior to deliberations. In fact, the record reveals that Appellant did not object until it was determined that the juror to be designated as the alternate was the only African-American on the jury. Additionally, there is no evidence that Appellant moved the court for a mistrial during the discussions that ensued on the record after the objection was made.

{¶47} During the discussion after the objection was made, the following exchange occurred:

"Mr. Meadows:      I know this is the way it's normally done, but –

The Court:      I know.

Mr. Meadows:      -- just for the record I want to enter an objection that we're

The Court:      I know. I know.

Mr. Meadows:      -- suddenly stricken the only African American on the jury.

Mr. Tieman:      I know.

Mr. Meadows:      It raises -- if flies in the face of (inaudible) and it's –

The Court:      I know. This may be a good case to challenge the system.

| | |
|---|---|
| Mr. Meadows: | It's a serious issue.  If it had been one of the other 12 jurors we wouldn't be standing here. |
| The Court: | I know. |
| * * * | |
| Mr. Meadows: | I -- I'll agree that's the procedure that happened.  However, you know in this case, you know, we've never -- we -- out of all the cases I've tried here, and I've tried a bunch of them here, I've never had this situation where an African American – |
| Mr. Tieman: | Yes.  Right. |
| Mr. Meadows: | -- was stricken – |
| The Court: | I understand.  I understand. |
| Mr. Meadows: | -- when I've got an African American client. |
| The Court: | Yeah. |
| Mr. Meadows: | So – |
| Mr. Tieman: | I understand too. * * *" |

Thus, it appears Appellant objected, not to the procedure in general, but to the result of the procedure that caused the elimination of the only African-American on the jury, noting that his client was also African American.

{¶48}  Despite the fact it appears defense counsel, the State and the visiting judge were all uncomfortable with the procedure used, this Court has concluded on two previous occasions that systems such as this do not

run afoul of Crim.R. 24. Crim.R. 24, which governs trial jurors, provides in

section (G)(1) "Alternate Jurors" as follows:

> "Non-Capital Cases. The court may direct that not more than
> six jurors in addition to the regular jury be called and impaneled
> to sit as alternate jurors. Alternate jurors in the order in which
> they are called shall replace jurors who, prior to the time the
> jury retires to consider its verdict, become or are found to be
> unable or disqualified to perform their duties. Alternate jurors
> shall be drawn in the same manner, have the same
> qualifications, be subject to the same examination and
> challenges, take the same oath, and have the same functions,
> powers, facilities, and privileges as the regular jurors. The court
> may retain alternate jurors after the jury retires to deliberate.
> The court must ensure that a retained alternate does not discuss
> the case with anyone until that alternate replaces a juror or is
> discharged. If an alternate replaces a juror after deliberations
> have begun, the court must instruct the jury to begin its
> deliberations anew. Each party is entitled to one peremptory
> challenge in addition to those otherwise allowed if one or two
> alternate jurors are to be impaneled, two peremptory challenges
> if three or four alternate jurors are to be impaneled, and three
> peremptory challenges if five or six alternative jurors are to be
> impaneled. The additional peremptory challenges may be used
> against an alternate juror only, and the other peremptory
> challenges allowed by this rule may not be used against an
> alternate juror."

{¶49} In *State v. Parish*, 4th Dist. Washington Nos. 05CA14,

05CA15, 2005-Ohio-7109, this Court was presented with a very similar

question, which challenged the trial court's practice of using a computer

game to generate a random number in order to choose the alternate juror at

the end of the case. We ultimately held that although the trial court's

procedure was not ideal (suggesting that the better practice was "to draw a

random number from a pill bottle or a hat, etc."), it did not constitute error, plain or otherwise. *Id.* at ¶ 19. We further found no error or violation of Crim.R. 24 in selecting the juror at the end of the case, noting as follows:

> "In fact, the American Bar Association recommends selecting alternate jurors at the conclusion of the case. See 'American Bar Association, Adopted by the House of Delegates,' February 14, 2005, Principle 11, Section G.7 (stating that '[t]he status of jurors as regular jurors or as alternates should be determined through random selection at the time for jury deliberation'). We agree with the trial court's rationale that selecting the alternate juror at the close of evidence rather than prior to opening statements encourages all jurors to pay careful attention to the evidence adduced at trial." *Id*. at ¶ 20.

We reached the same result in *State v. Plessinger*, 4th Dist. Washington No. 05CA48, 2006-Ohio-2594, ¶ 2 (summarily rejecting an identical argument on the authority of *Parish, supra.*).

{¶50} Here, the trial court used a more preferred method of drawing a number out of a basket, as alluded to in *Parish*, rather than using a computer game to generate a random number. Further, in light of our reasoning in *Parish*, there are legitimate reasons to conclude waiting until the end of the case to select the alternate juror, as demonstrated by the stance taken by the American Bar Association. In light of the foregoing, we find no plain error with respect to the trial court's procedure for selecting the alternate juror in this case.

{¶51} Appellant also argues that the trial court's alternate juror selection procedure, in this case, deprived him of equal protection of the law, much like the U.S. Supreme Court held in prohibiting preemptory challenges for jurors based on race in the decision of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution precludes *purposeful* discrimination by the State in the exercise of its peremptory challenges to exclude prospective jurors solely on account of their race. *Id.* at 89. A court must apply a three-step test when considering a *Batson* claim. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61. First, the defendant must make a prima facie case of racial discrimination. *Batson* at 96–97. Second, if the defendant satisfies that burden, the prosecution must provide a racially neutral explanation for the challenge. *Id.* at 97–98. Third, the trial court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination. *Id.* at 98. At this stage, the court "must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. The judge must "assess the plausibility" of the prosecutor's reason for striking the juror "in light of all evidence with a bearing on it." *Miller–El v. Dretke*, 545 U.S. 231, 252,

125 S.Ct. 2317 (2005).  A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous. *Frazier* at ¶ 64; *see Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029 (2003).  If a trial court does err in applying *Batson*, the error is structural. *United States v. McFerron*, 163 F.3d 952, 956 (6th Cir.1998).

{¶52}  Thus, the *Batson* decision dealt with preemptory challenges in jury selection, not the random selection of an alternate juror prior to trial, a juror which, here, had not been challenged on the basis of race and had actually been seated on the jury.  *Batson* aims to prevent "purposeful racial discrimination," as opposed to the random selection of alternate jurors, which may be eliminated by choosing a random number without regard to the race of the juror.  We cannot conclude that *Batson* is directly applicable to the facts before us, or that the spirit of *Batson* is offended by the alternate juror procedure at issue.  We further note that Appellant failed to object on Batson grounds at the trial court level and instead raises this particular argument for the first time on appeal.  Because Appellant did not raise this issue during the trial court proceedings, he may not raise it for the first time on appeal. *State v. Kerns*, 4th Dist. Washington No. 99CA30, 2000 WL 310357, *2 (Mar. 21, 2000); *State v. Bing*, 134 Ohio App.3d 444, 731 N.E.2d 266 (9th Dist.1999); *See generally State v. Quarterman*, 140 Ohio

St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 15 (2014) (It is a well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' ").

{¶53} In light of the foregoing, we find no error, let alone plain error, in the trial court's failure to declare a mistrial related to the procedure employed for eliminating alternate jurors prior to deliberations which resulted, in this case, in the elimination of the only African-American juror on the jury.  Accordingly, Appellant's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

{¶54} In his sixth assignment of error, Appellant contends he was denied his Sixth Amendment right to a fair trial when his pro se motions went unaddressed.  More specifically, Appellant argues the trial court erred in failing to address his pro se motion to suppress and motion for an evidentiary hearing.  Appellant suggests the fact that two different judges presided over the trial may have resulted in confusion over what issues had been addressed versus unaddressed.  The State, however, argues that Appellant, who was represented by counsel, was engaging in prohibited "hybrid representation" by filing pro so motions and that the trial court

properly struck the motions from the record on April 11, 2017, just after

trial. For the following reasons, we agree with the State.

{¶55} "It is well-established that although a defendant has the right to

counsel or the right to act pro se, a defendant does not have any right to

'hybrid representation.' " *State v. James*, 4th Dist. Ross No. 13CA3393,

2014-Ohio-1702, ¶ 12; quoting *State v. Martin*, 103 Ohio St.3d 385, 2004–

Ohio–5471, 816 N.E.2d 227, paragraph one of the syllabus; *see also State v.*

*Thompson*, 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407 (1987). As explained in

*James*, "[t]he right to counsel and the right to act pro se 'are independent of

each other and may not be asserted simultaneously.' " *Id*; quoting *Martin*,

paragraph one of the syllabus.

{¶56} This Court further explained as follows in *State v. James* at

¶ 13:

> "Appellate courts have determined that when counsel represents
> a criminal defendant, a trial court may not entertain a
> defendant's pro se motion. *State v. Washington*, 8th Dist.
> Cuyahoga Nos. 96565 and 96568, 2012–Ohio–1531), ¶ 11
> ('Because [defendant] chose to proceed with legal
> representation, the court could not consider [defendant]'s
> motion to withdraw his plea, which his appointed counsel did
> not agree with.'); *State v. Pizzarro*, 8th Dist. Cuyahoga No.
> 94849, 2011–Ohio–611, ¶ 9 ('Had the trial court entertained
> defendant's pro se motion while defendant was simultaneously
> being represented by appointed counsel, this would have
> effectively constituted hybrid representation in violation of the
> established law.'); *State v. Smith*, 4th Dist. Highland No.
> 09CA29, 2010–Ohio–4507, ¶ 100, quoting *Thompson*, 33 Ohio

St.3d at 6–7 (concluding that trial court did not err by refusing to consider criminal defendant's pro se motions when counsel represented defendant, because criminal defendant ' "has no corresponding right to act as co-counsel on his own behalf' " '); *State v. Davis*, 10th Dist. Franklin No. 05AP–193, 2006–Ohio– 193, ¶ 12 ('[W]here a defendant who is represented by counsel files pro se motions and there is no indication that defense counsel joins in those motions or indicates a need for the relief sought by the defendant pro se, such motions are not proper and the trial court may strike them from the record.'); *State v. Greenleaf*, 11th Dist. Portage No.2005–P–0017, 2006–Ohio– 4317, ¶ 70, quoting *Thompson*, 33 Ohio St.3d at 6–7 ('Once appellant accepts counsel's assistance and does not move the court to proceed pro se, he may not "act as co-counsel on his own behalf. " ')."

**{¶57}** Here, Appellant was represented by counsel when he filed both of his pro se motions below.  Further, there is no indication from the record before us that Appellant's trial counsel joined in or adopted the motions.  Thus, Appellant's pro se motions were not properly before the court. *James* at ¶ 14.  As set forth above, such "hybrid representation" is prohibited and the trial court was not permitted to entertain the motions.  As such, they were properly stricken from the record.  For these reasons, we find no merit to Appellant's sixth assignment of error.  Accordingly, it is overruled.

ASSIGNMENT OF ERROR VII

**{¶58}** In his seventh and final assignment of error, Appellant contends cumulative error committed during his trial deprived him of a fair trial and require reversal of his convictions.  Under the doctrine of

cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of [the] numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Harrington*, 4th Dist. No. 05CA3038, 2006-Ohio-4388, ¶ 57; citing *Goff*, 82 Ohio St.3d at 140, 694 N.E.2d 916.

{¶59} As set forth above, with the exception of one finding of harmless error under Appellant's third assignment of error, we have found no merit in any of the arguments raised by Appellant on appeal. Thus, we have found no error, plain or otherwise, that changed the outcome of the trial or that would amount to cumulative error. Accordingly, after reviewing the entirety of the proceedings below, we do not find Appellant's convictions should be reversed because of cumulative error. The judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Judgment Only.

For the Court,

BY:  _____
     Matthew W. McFarland

## NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**